UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 25-3291-GW-ADSx | Date | May 18, 2026 |
|---|---|---|---|
| Title | *Alistair Casey v. USA Badminton, et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE |
|---|---|

| Javier Gonzalez | None Present | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**PROCEEDINGS:    IN CHAMBERS - FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Attached hereto is the Court's Findings of Fact and Conclusions of Law. The Court enters judgment in favor of Plaintiff in the amount of $148,693.38.13. The Court sets a status conference for May 28, 2026 at 8:30 a.m.

|  | : |
|---|---|
| Initials of Preparer | JG |

*__Alistair Casey v. USA Badminton et al__*; Case No. 2:25-cv-03291-GW-(AGRx)
Findings of Fact and Conclusions of Law

## I. Background

On February 27, 2025, Alistair Casey ("Plaintiff") filed suit against USA Badminton[1] ("Defendant") and Does 1-20, inclusive, in the Superior Court of California for the County of Los Angeles. *See* Complaint, Docket No. 1-1. On April 15, 2025, Defendant removed this suit to federal court. *See* Notice of Removal, Docket No. 1. Plaintiff brings one claim for violation of Cal. Lab. Code § 2802 against Defendant, alleging that Defendant refused to indemnify him for attorney's fees and costs incurred from defending a lawsuit that was filed as a consequence of his employment with Defendant. *See generally* Complaint. Plaintiff seeks judgment in his favor and an award of $165,214.87, plus attorney's fees. *See* Plaintiff's Trial Brief, Docket No. 50, at 3.

Following a bench trial that took place on April 1, 2026 (*see* Docket Nos. 56, 57), the Court ordered each party to submit a three-page brief concerning the factual portions of the evidence. *See* Docket No. 54. On April 6, 2026, each party filed its post-trial brief. *See* Defendant's Post-Trial Brief, Docket No. 58-1; Plaintiff's Post-Trial Brief, Docket No. 59-1. Pursuant to Fed. R. Civ. P. 52(a)(1), the Court issues the following findings of fact and conclusions of law.

## II. Findings of Fact

### A. Stipulated Facts

The parties have stipulated to the following facts:

Plaintiff was employed by Defendant from January 2, 2020 to November 16, 2021 as Defendant's Chief of Staff and SafeSport Coordinator. *See* Joint Stipulation of Facts, Docket No. 43, at ¶¶ 1-2. SafeSport is an entity authorized by Congress to receive and investigate allegations of sexual abuse involving individuals in Olympic and Paralympic games or sports programs. *See id.* ¶ 3. During his employment with Defendant, Plaintiff reported to SafeSport about the conduct of Defendant's then-CEO Linda French and Defendant's then-counsel Jon Little ("Mr. Little"). *See id.* ¶ 4. On September 12, 2023, Plaintiff was sued by Mr. Little in the U.S. District Court for the Southern District of Indiana in a case titled *Jon Little, et al. v. Alistair Casey*, Case No. 1:23-cv-01647-RLY-(KMB) (S.D. Ind.), for defamation and conversion ("Indiana Lawsuit"). *See id.*

---

[1] During the relevant time period herein, Defendant USA Badminton was the national governing body for the sport of badminton in the United States. *See* Transcript of Court Trial ("Tr."), Docket No. 56, at 78:13-14.

1

¶ 6.  Plaintiff retained Rosen Saba, LLP ("Rosen Saba") and Indiana law firm Mattingly Burke Cohen & Biederman, LLP ("MBCB") to defend him in the Indiana Lawsuit.  *See id.* ¶ 7.  Plaintiff filed a motion to dismiss and an anti-SLAPP motion in that action, which resulted in the dismissal of the claims against Plaintiff for lack of personal jurisdiction.  *See id.* ¶ 8.  The attorney's fees and costs Plaintiff incurred in the Indiana Lawsuit are set forth in billing records from Rosen Saba and MBCB.  *See id.* ¶ 9.  Plaintiff submitted requests for indemnification by Defendant pursuant to Cal. Lab. Code § 2802 on three separate occasions for the expenditures and losses incurred as a result of having to defend the Indiana Lawsuit.  *See id.* ¶ 10.  Defendant declined these requests for indemnification.  *See id.* ¶ 11.

### B.  Additional Factual Findings

As Chief of Staff and SafeSport Coordinator, it was Plaintiff's explicit duty to "[o]versee and track grievance/complaint process and management, including referral to appropriate entities," such as SafeSport, and to "[o]versee and ensure compliance with [U.S. Olympic & Paralympic Committee] athlete safety policy."  *See* USAB Job Description for Chief of Staff/SafeSport Coordinator, Trial Ex. 6.  Plaintiff testified that he understood these duties to mean that "[i]t was [his] job responsibility to report allegations" of abuse and misconduct.  *See* Tr. at 84:2-85:2.  In August 2021, Plaintiff made a report to SafeSport about two allegations of sexual abuse – one that "came up immediately prior to the Olympics, which was July 2021" (the "2021 Incident") and the other was "an incident from 2014, when . . . an adult told [him] a story when [they] were drunk" (the "2014 Incident") – as well as the alleged conduct of Mr. Little (*i.e.*, his discouragement of Plaintiff's reporting to SafeSport about the 2021 Incident and potential destruction of evidence related to this allegation).[2]  *See id.* at 86:4-89:8.  Plaintiff testified that he made this report to SafeSport about Mr. Little because he believed that "[i]t was [his] job responsibility to report" and that "[i]t was also an abuse of process to tell [him] not to."  *See id.* at 89:9-12.  Plaintiff testified that he "backed up [his] USA Badminton e-mails from the Saeed & Little server and also with USA Badminton" to "preserve evidence that might have been needed for SafeSport's investigation into the matters [he] reported in August 2021."  *See id.* at 91:9-15.  Plaintiff believed that downloading these e-mails was part of his role as SafeSport Coordinator because SafeSport views

---

[2] Plaintiff also informed SafeSport about the conduct of other persons who he had accused of telling him not to report incidents to SafeSport, including Linda French (then-CEO of Defendant) and Ben Lee (a badminton coach affiliated with Defendant and "an immediate past president").  *See* Tr. at 90:12-91:1.

the destruction of evidence as an "abuse of process." *See id.* at 91:16-22. SafeSport's code of conduct ("SafeSport Code") characterizes "abuse of process" as misconduct that may give rise to sanctions. *See* Trial Ex. 1, App. A, at 8. Abuse of process includes "destroying or concealing information prior to or during an investigation." *See id.* The Court finds that Plaintiff's report to SafeSport in August 2021 and his downloading of emails for the purpose of preserving evidence related to certain allegations in this report were within the scope of his duties as SafeSport Coordinator.

On September 12, 2023, Mr. Little and his law firm brought suit against Plaintiff in the U.S. District Court for the Southern District of Indiana, seeking damages for defamation and conversion. *See generally* Indiana Lawsuit Complaint, Trial Ex. 22. The Indiana Lawsuit Complaint alleges, *inter alia*, that Plaintiff "reported [Mr.] Little to . . . SafeSport for not reporting child sexual abuse" and "downloaded the entire contents of his at @sllawfirm.com email address without permission."[3] *See id.* ¶¶ 63-64. The Indiana Lawsuit Complaint references Plaintiff's report to SafeSport in August 2021, *see id.* ¶¶ 41-49, and an email from Mr. Little dated September 7, 2021 regarding Mr. Little's "recommendation as to what USA Badminton's reporting policy should be," *see id.* ¶ 54.[4] The defamation count incorporates these allegations and states that Plaintiff "publicly accused Mr. Little, and by connection, Saeed & Little, LLP, with failure to report child sex abuse and with failure to comply with a federal statute." *See id.* ¶¶ 86-87. This count further alleges that Plaintiff "continues to defame Mr. Little in the press" and "to members of the victims advocate community through his employment with the non-profit company, Champion Women."[5] *See id.* ¶¶ 89-90. The conversion count alleges that "[w]hen [Plaintiff]

---

[3] Plaintiff and Mr. Little's law firm had discussions in 2019-20 during which the latter provided Plaintiff with access to the firm's email address. *See* Tr. 105:10-106:16. Plaintiff asserted that said access was provided because the firm was representing Defendant with a subpoena from the U.S. Department of Justice (*id.*); while Mr. Little asserted that Plaintiff was supplying the law firm with insight/research on various national amateur sports governing bodies. *Id.* at 131:17-132:11.

[4] The Indiana Lawsuit Complaint and Defendant's post-trial brief suggests that, contrary to Plaintiff's testimony, Plaintiff had reported the alleged conduct relating to Mr. Little in September 2021, not August 2021. *See, e.g.*, Indiana Lawsuit Complaint ¶ 63 ("Shortly after receiving the September 7, 2021 email, Casey reported Little to the Center For Safe Sport for not reporting child sexual abuse."); Defendant's Post-Trial Brief at ¶ 12 (In September 2021, . . . Alistair Casey filed a report against Jonathan Little with the US Center for SafeSport."). While the Court notes this discrepancy, the Court does not find that it materially affects the analysis.

[5] Plaintiff testified that he worked as the COO for Champion Women from January 2022 to March 2024. *See* Tr. at 122:25-123:2. Mr. Little testified that he was a recipient of an email blast from Champion Women on March 13, 2023 discussing Plaintiff's allegations against him and Defendant's former CEO. *See id.* at 144:14-24 (referring to

3

downloaded his @sslawfirm.com emails, [he] knowingly and intentionally exerted unauthorized control over Saeed & Little, LLP property." *See id.* ¶ 96.

Although Mr. Little testified that he filed the Indiana Lawsuit in response to the email blast he received from Champion Women, there can be no question that the lawsuit was based on Plaintiff's report to SafeSport in August 2021. The email blast itself is about this report. *See* Trial Ex. 54, at 1 ("USA Badminton's CEO and General Counsel Directed AlistairCasey [sic] Not to Report Child Rape."). Although Mr. Little testified that he was in mediation with Champion Women and its CEO Nancy Hogshead-Makar ("Ms. Hogshead-Makar"), *see* Tr. at 158:25-159:4, it is somewhat revealing that neither were named defendants in the original complaint. Absent from the original complaint was also any allegation relating to the email blast from Champion Women that ended up later serving as a basis for Mr. Little's defamation claim against this entity and Ms. Hogshead-Makar in the amended complaint. *See* Indiana Lawsuit Amended Complaint, Trial Ex. 37, at ¶¶ 199-222, 248-53. In short, while the Court acknowledges that Champion Women's email blast from 2023 may have prompted Mr. Little's lawsuit, it is clear from the face of the original complaint filed by Mr. Little that his defamation claim was also premised upon Plaintiff's report to SafeSport in August 2021.[6] Mr. Little's opposition filing to Plaintiff's motion to dismiss in the Indiana Lawsuit only confirms this conclusion. *See* Trial Ex. 79, at 19 ("Mr. Casey took it upon himself to defame Mr. Little on multiple occasions, including *at least* the following two: (1) *the false allegations to SafeSport*, and (2) the Champion Women email blast." (emphasis added)).

The conversion claim is also related to Plaintiff's report to SafeSport in August 2021 insofar as it is premised upon Plaintiff's downloading of emails pertaining to certain allegations in that report. As Defendant points out in its post-trial brief, it is against SafeSport Code for individuals to "investigate, or attempt to evaluate the credibility or validity of allegations involving

---

Trial Ex. 54). Mr. Little testified that he would not have filed the Indiana Lawsuit but for this email in 2023. *See id.* at 158:21-23.

[6] Defendant relies on the allegation in the Indiana Lawsuit Complaint pertaining to the defamation count that indicates that Plaintiff "publicly accused Mr. Little" to imply that the lawsuit could not have been based on Plaintiff's report to SafeSport because such report was not made public. *See* Tr. at 125:5-7, 169:6-18, 174:5-8; *see also* Defendant's Trial Brief at 1. As this Court already indicated at trial, "[t]he documents . . . speak for themselves." *See* Tr. at 174:10-11. Furthermore, it appears that the substance of Plaintiff's report to SafeSport in 2021 was shared with the U.S. Senate's Committee on the Judiciary, which (through U.S. Senator Charles E. Grassley) sent a public letter to Defendant "to remind USA Badminton of its obligations under the law." *See id.* at 92:7-23 (referring to Trial Ex. 17).

sexual misconduct, as a condition of reporting to the Office." *See* Defendant's Post-Trial Brief at 5; Trial Ex. 1, app. A, at 2.  The Court, however, fails to understand how Plaintiff's *preservation* of evidence for purposes of SafeSport's investigation into his report may be characterized as Plaintiff's *investigation* of the allegations therein.  SafeSport's Notice of Allegations to Mr. Little specifically identifies that he was reported for having, *inter alia*, "encouraged the concealment and destruction of evidence on the subject." *See* Trial Ex. 18, at 1.  Plaintiff's action of downloading emails related to the allegations made in his report to SafeSport is, therefore, inextricably intertwined with the report itself.  Irrespective of the merits of a conversion claim against Plaintiff, it is clear that this claim was brought against Plaintiff for an action arising out of his duty to report allegations of sexual misconduct to SafeSport.

## III.  Legal Standard

Cal. Lab. Code § 2802 provides, in relevant part:

> An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful.

Cal. Lab. Code § 2802(a).  "Section 2802 is designed to protect workers from bearing the costs of business expenses that are incurred by workers doing their jobs in service of an employer." *Thai v. Int'l Bus. Machines Corp.*, 93 Cal. App. 5th 364, 370 (2023) (citations omitted).  "In light of the remedial purpose of statutes that regulate 'wages, hours and working conditions for the protection and benefit of employees, the statutory provisions are to be liberally construed with an eye to promoting such protection . . . .'" *Id.* (ellipsis in original) (quoting *Gallano v. Burlington Coat Factory of Cal., LLC*, 67 Cal. App. 5th 953, 963 (2021)).  "The elements of a claim under Section 2802 are: (1) the employee made expenditures or incurred losses; (2) the expenditures or losses were incurred in direct consequence of the employee's discharge of his or her duties, or obedience to the directions of the employer; and (3) the expenditures or losses were reasonable and necessary." *McLeod v. Bank of Am., N.A.*, No. 3:16-cv-03294-EMC, 2017 WL 6373020, at *5 (N.D. Cal. Dec. 13, 2017).  "[A]n employee's failure to submit a request for reimbursement does not waive his or her rights under Section 2802." *Id.*  "Rather, when the employer 'know[s] or has reason to know that the employee has incurred an expense,' then 'it has the duty to exercise due diligence and take any and all reasonable steps to ensure that the employee is paid for the expense.'" *Id.* (alteration in original) (quoting *Stuart v. RadioShack Corp.*, 641 F. Supp. 2d 901,

904 (N.D. Cal. 2009)).

Cal. Lab. Code § 2802 is designed to indemnify employees for their legal defense costs when they are sued for actions arising out of their employment.  As observed in *Freund v. Nycomed Amersham*, 347 F.3d 752, 766 (9th Cir. 2003): "California Labor Code § 2802 states that 'an employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties . . . .'  Cal. Labor Code § 2802(a).  The statute defines 'necessary expenditures' to include 'attorney's fees incurred by the employee enforcing the rights granted by this section.' Cal. Labor Code § 2802(c)."  *See also Devereaux v. Latham & Watkins*, 32 Cal. App. 4th 1571, 1583 (1995); *Jacobus v. Krambo Corp.*, 78 Cal. App. 4th 1096, 1100 (2000).

## IV.  <u>Conclusions of Law</u>

The elements of a Cal. Lab. Code § 2802 claim are whether: "(1) the employee made expenditures or incurred losses; (2) the expenditures or losses were incurred in direct consequence of the employee's discharge of his or her duties, or obedience to the directions of the employer; and (3) the expenditures or losses were necessary." *Nicholas Laboratories, LLC v. Chen*, 199 Cal. App. 4th 1240, 1249, 132 (2011).  The Court concludes that Plaintiff has established by a preponderance of the evidence that all three elements have been met.

### A.  **Plaintiff Made Expenditures or Incurred Losses**

The evidence presented at trial includes the expenses Plaintiff incurred in defending against the claims in the Indiana Lawsuit.  Ryan D. Saba ("Mr. Saba"), partner and founder of Rosen Saba, testified that Rosen Saba sent Plaintiff invoices for the fees and costs incurred in its representation of Plaintiff in the Indiana Lawsuit.  *See* Tr. at 22:8-23:1; *see also generally* Trial Ex. 87 (collection of invoices from Rosen Saba and submitted to Plaintiff).  Mr. Saba further testified that Plaintiff paid the majority of the invoices himself.  *See* Tr. at 23:2-3, 23:22-24:5.  Plaintiff testified that the invoices from Rosen Saba amounted to about $139,000 and that he paid about $82,000, leaving the remaining amount owed to the firm at $48,000 plus interest (which Mr. Saba indicated the firm intends to seek upon conclusion of this matter).  *See id.* at 24:6-10, 97:23-98:1.  MBCB served as local counsel and also sent Plaintiff invoices for the fees and costs incurred in assisting with Plaintiff's defense in the Indiana Lawsuit.  *See id.* at 21:3-6, 49:25-50:22, 57:14-20; *see also generally* Trial Ex. 134 (collection of invoices from MBCB and submitted to Plaintiff).  Plaintiff testified that the invoices from MBCB amounted to about $8,000 in total and that he paid all of

the invoices in full. *See* Tr. at 96:22-97:2.

The first element (*i.e.*, that Plaintiff incurred expenditures) is clearly satisfied.

## B. Expenditures or Losses Were Incurred in Direct Consequence of the Plaintiff's Discharge of His Duties

The Court finds that the Indiana Lawsuit (for which Plaintiff made legal expenditures as outlined in the preceding section) was brought against Plaintiff for two actions arising out of his employment with Defendant – *i.e.*, Plaintiff's report to SafeSport in August 2021 and his downloading of emails related to the allegations in that report. Whether there is any merit to the claims brought against Plaintiff in the Indiana Lawsuit is a separate question from whether they arose out of his employment with Defendant. However, the Court concludes that the two actions sufficiently arose from his employment duties (including his obligation a report to SafeSport about allegations of sexual abuse or "abuse of process").

The second element, therefore, is satisfied.

## C. Expenditures or Losses Were Reasonable and Necessary

Section 2802(c) provides that "the term 'necessary expenditures or losses' shall include all reasonable costs, including, but not limited to, attorney's fees incurred by the employee enforcing the rights granted by this section." Cal. Lab. Code § 2802(c). "California courts have found that '[n]ecessity is by nature a question of fact' and that 'the reasonableness of any given expenditure must turn on its own facts.'" *Nguyen v. Wells Fargo Bank*, No. 3:15-cv-05239-JCS, 2016 WL 5390245, at *9 (N.D. Cal. Sept. 26, 2016) (quoting *Grissom v. Vons Companies, Inc.*, 1. Cal. App. 4th 52, 58 (1991)).

The evidence presented at trial indicates that Plaintiff's expenditures were reasonable and necessary. Mr. Saba testified that his firm was retained by Plaintiff for purposes of assisting with Plaintiff's defense in the Indiana Lawsuit because (1) the "firm had a lot of institutional knowledge;" (2) Plaintiff "didn't want to have to pay another law firm to get up to speed, learn about SafeSport, learn about the allegations;"[7] and (3) the firm "had spent considerable amount of hours and time handling the matter ahead of time." *See* Tr. at 20:17-21:2. Rosen Saba's invoices to Plaintiff generally reflect work completed on behalf of Plaintiff's defense in the Indiana

---

[7] Plaintiff had previously retained Rosen Saba in filing his wrongful termination suit against Defendant (Defendant had terminated Plaintiff following his report to SafeSport). *See* Tr. at 18:4-8. The parties settled this lawsuit in January 2023. *Id.* at 18:9-10; *see also generally* Trial Ex. 20.

Lawsuit, including obtaining assistance from local counsel, briefing the motion to dismiss for lack of personal jurisdiction and the anti-SLAPP motion, and preparing discovery requests and responses.[8]   *See generally* Trial Ex. 87.   MBCB's invoices to Plaintiff similarly reflect work completed on behalf of Plaintiff's defense in the Indiana Lawsuit, including conferring with Rosen Saba about the pro hac vice admission process and various filings.   *See generally* Trial Ex. 134. Plaintiff never contested any of the charges on the invoices from Rosen Saba or MBCB as unreasonable or unnecessary.  *See* Tr. at 97:7-9, 98:16-18.  Although Defendant made "a general challenge to the reasonableness of the charges" at trial, *see* Tr. at 74:7-8, Defendant did not present any evidence that suggests any particular line item on the invoices from Rosen Saba or MBCB was for unnecessary or unreasonable legal services.  The Court has closely reviewed the invoices and finds no clear indication that the legal services for which Plaintiff was billed were either unreasonable or unnecessary.

Plaintiff indicates that Rosen Saba billed him $131,203.12 for fees and costs incurred in the Indiana Lawsuit.   *See* Plaintiff's Post-Trial Brief at 3 (citing Trial Ex. 87).   Plaintiff was charged discounted hourly rates by Rosen Saba – *i.e.*, $800 per hour for work performed by partners and $500 per hour for work performed by associates.  *See id.* at 3-4 (citing Tr. at 25:21-26:2).  Plaintiff further indicates that MBCB billed him $8,095.65 for fees and costs incurred in the Indiana Lawsuit. *See id.* at 4.  Plaintiff was also charged discounted hourly rates by MBCB – *i.e.*, $425 per hour for work performed by partners and $225 per hour for work performed by associates.   *See* Tr. at 57:14-58:5; *see also generally* Trial Ex. 134.   For lawyers practicing litigation in Los Angeles, California, partners bill between $548 and $1,268 with a median of $895 and associates bill between $477 and $946 with a median of $713.  *See* Wolters Kluwer/CEB, *2024 Real Rate Report*, at 16.  For lawyers practicing litigation in Indianapolis, Indiana, partners bill between $400 and $628 with a median of $464 and associates bill between $250 and $370 with a median of $332.  *Id.* at 15.  The firms' respective rates appear to the Court to be generally reasonable, especially given that they were discounted and not directly challenged by Defendant at trial.[9]

---

[8] Mr. Saba testified that the invoices are actually underinclusive of the work performed by Rosen Saba on behalf of Plaintiff because the firm does not, as a "general practice," charge its clients for "ministerial type stuff" or "paralegal work."  *See* Tr. at 24:14-19.

[9] The Court indicated at trial that it may utilize Indiana rates unless it finds that Plaintiff's choice to retain Rosen

The third and final element, therefore, is satisfied.

### D. Affirmative Defense[10]

Defendant asserts the affirmative defense of unclean hands because one of the two allegations of sexual abuse (*i.e.*, the 2014 Incident) that he reported to SafeSport in August 2021 was within Plaintiff's knowledge long before he ever reported it to SafeSport. *See* Tr. at 13:23-14:6. Defendant claims that Plaintiff's "failure to report for seven years would establish unclean hands." *See id.* at 15:17-18. Defendant's position is that "had [Plaintiff] reported [the 2014 Incident] earlier, as he was required to, it never would have been an issue because there never even would have been this discussion with USA Badminton."[11] *See id.* at 16:9-12.

Plaintiff indicates in his trial brief that the defense of unclean hands may not be used to defeat his statutory claim. *See* Plaintiff's Trial Brief at 3 (first citing *Salas v. Sierra Chem. Co.*, 59 Cal. 4th 407, 431 (2014); and then citing *Mendoza v. Ruesga*, 169 Cal. App. 4th 270, 280 (2008)). Indeed, courts in the Ninth Circuit have found the doctrine of unclean hands is inapplicable as a defense to Labor Code violations under California law. *See, e.g.*, *Moreno v. Pretium Packaging, LLC*, No. 8:19-cv-02500-JVS-DFM, 2020 WL 4333353, at *4 (C.D. Cal. July 17, 2020) (collecting cases). The Court sees no reason to deviate and, even if it did, the Court does not find that there was sufficient evidence presented at trial to support such a defense.[12]

---

Saba rather than Indiana-based counsel was unreasonable. *See* Tr. at 167:1-10. The Court does not find that Plaintiff's retention of this Los Angeles-based firm for his defense in the Indiana Lawsuit to be unreasonable in light of the testimony heard at trial from both Plaintiff and Mr. Saba.

Although there might be a little room to argue about to the rates charged, the Court deals with that issue through the "hair cut" option as delineated below.

[10] Before trial, Defendant asserted three affirmative defenses (*i.e.*, mitigation of damages, unclean hands, and comparative fault). *See* Docket No. 49, at 2-3. At trial, Defendant abandoned its affirmative defenses based on mitigation of damages and comparative fault. *See* Tr. at 13:13-21, 16:16-17:3. As such, the only affirmative defense Defendant asserts against Plaintiff's claim in this case is that of unclean hands. *See id.* at 17:5-8.

[11] It is noted that the unclean hands argument is based on only one of the two incidents which Plaintiff reported to SafeSport – which, even if one were to use it for purposes of the affirmative defense, would be insufficient. Further, it is questionable whether a failure to report the 2014 Incident (which could simply be a result of negligence) would give rise to a finding of unclean hands especially since the SafeSport Act itself was not enacted until 2018. *See generally, White v. U.S. Ctr. for SafeSport*, No. 24-cv-08028-DMR, 2025 WL 2772482 at *3 (N.D. Cal. Sept. 29, 2025).

[12] Plaintiff also indicates in his trial brief that the defense of unclean hands is inapplicable here because the alleged conduct relating to this defense "was not committed in regard to enforcing his right to indemnification." *See* Plaintiff's Trial Brief at 3 (citing *Kendall-Jackson Winery, Ltd. v. Superior Ct.*, 76 Cal. App. 4th 970, 979 (1999)). The Court agrees. As the California Court of Appeal indicated:

The misconduct that brings the clean hands doctrine into play must relate directly to the cause at issue. Past

## V. **Summation**

Based on the foregoing discussion, the Court finds in favor of Plaintiff on his single claim for violation of Cal. Lab. Code § 2802 against Defendant.  As already indicated, Plaintiff seeks as judgment a total of $165,214.87, plus attorney's fees.  *See* Plaintiff's Trial Brief at 3.  "The district court can impose a small reduction, no greater than 10 percent – a 'haircut' – based on its exercise of discretion and without a more specific explanation."  *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008); *accord*, *Costa v. Comm'r of Sco. Sec. Admin.*, 690 F.3d 1132, 1136 (9th Cir. 2012).  The Court, therefore, enters judgment in favor of Plaintiff in the amount of $148,693.38.[13]

---

improper conduct or prior misconduct that only indirectly affects the problem before the court does not suffice.  The determination of the unclean hands defense cannot be distorted into a proceeding to try the general morals of the parties.

*Kendall-Jackson Winery*, 76 Cal. App. 4th at 971-72.

[13] To the extent Plaintiff seeks additional attorney's fees he incurred by enforcing the rights granted by Cal. Lab. Code § 2802 in this lawsuit, he has not submitted any relevant information.  As such, the Court reserves judgment with respect to any award of such fees.